S. E. BRUCE, adm'rx, plaintiff in error, vs. JOSEPH CREWS, defendant in error.

1. A witness called to prove handwriting, who fails to testify, without qualification, that he is acquainted with it, but only says he is from having seen letters purporting to be written by the party, which were received in the ordinary course of business by a commercial house, in which the witness was a clerk, though he had neither written nor seen letters from the house to the party, to which those were replies, is incompetent to testify as to his belief of the handwriting.

2. A witness called to prove that a copy tendered in evidence is a copy of a paper written by the party, cannot be shown papers admitted to be genuine, and already in evidence, and be then asked if the original, the copy of which is offered as evidence, is not in the same handwriting as those shown to him.

3. Where the consideration of defendant's contract is executory, i. e. where the plaintiff is to do some act, either before or coincident with the act of the defendant, the plaintiff must aver and prove either performance on his part, or if the acts are, by the contract, to be performed simultaneously, he must prove a personal request to the defendant to perform.

4. When the facts of a case have been fairly submitted to a jury, and no rule of law material to the rights of the parties has been violated, either by the Court on the trial, or by the jury in the finding, this Court will not disturb the verdict.

Proof of handwriting. Case. Decided by Judge GIBSON. Richmond Superior Court. January Term, 1869.

Bruce, adm'rx, *vs.* Crews.

On the 8th of September, 1865, Joseph Crews bound himself in writing to convey for Bruce two hundred bales of cotton from Laurens Court-house, South Carolina, to Augusta, Georgia, within eight weeks from that date, in consideration of $6 00 per bale in gold, to be paid by Bruce to Crews, as the cotton arrived.    This cotton was then in Crews' warehouse at Laurens Court-house.    He did not carry it, and Bruce sued him, averring that Crews had damaged him not only by failing to convey it, as he promised, but, by preventing his getting possession of it, had caused him great loss by reason of the decline in the price of cotton.    Bruce died, and his administratrix became the plaintiff.

The defence was, that military orders and military seizure caused the failure and detention.    The plaintiff's counsel, in rebuttal, sought to show that this military interference was brought about by Crews.    During the trial, two letters written by Crews to Bruce, on the subject of said cotton, had been read in evidence.    Plaintiff's counsel sought to introduce a copy of what purported to be a letter from Crews to one Colonel Brown about this cotton, in which it was stated that Crews claimed the cotton as his own; that if it was not, he (Crews) was an agent of the United States Treasury Department, and suspected that Bruce had bought the cotton from blockade-running companies, and therefore did not comply with a military order to deliver it to Bruce.    It was signed Joseph Crews, and had on it a certificate, dated January 19th, 1866, signed " C. S. Brown, Lt. Col. 1st Batt. M. Vols., com'd'g 3rd Sub. Dist., Western So. Ca.," in which this Brown stated that the original was in his possession.    A witness was called to testify to his knowledge of Crews' handwriting.    He was introduced to prove that he made said copy, and that the original was in Crews' handwriting, and to account for the non-production of the original in order to get in said copy.    He stated that he knew Crews' handwriting from having seen letters, purporting to come from Crews, received by a commercial house in which the witness was a clerk, through the post office and in the ordinary course of business.    But he said none of said letters were in reply to

Bruce, adm'rx, *vs.* Crews.

any letter written by him, nor had he seen the letters to which they purported to be replies. The Court held that the witness had not sufficient knowledge of Crews' handwriting to prove it. They then proposed to show the witness the two letters already in evidence, written by Crews, and to have him testify that the letter from which he made said copy was in the same handwriting as that of those two letters. The Court refused to allow this.

After the charge of the Court, the jury rendered a verdict for the defendant. The plaintiff's attorney moved for a new trial upon the grounds that the Court had erred in said rulings, and because the verdict was against the evidence and the principles of equity. The new trial was refused, and this is assigned as error.

JOHNSON & MONTGOMERY, for plaintiff in error, cited as to the question of handwriting: Rex vs. Slaney, 5 C. & P., 213; Titford vs. Knott, 2 John. Cases, 211; 2 Phil. on Ev., (Ed. 1859) 599, note 481, 251—3, n. 601, 254—5, n. 1; 5th A. & E., 727, 424; Irwin's Code, secs. 3786–7; McNair vs. Commonwealth, 2 Penn. St. R., 388; 9 Co. R., 94, 112; Lyon vs. Lyman, 9 Conn. R., 55; Griffith vs. Ivery, 11 A. & E., 322; Griffith vs. Williams, 1 Cro, & J., 47; Medeios vs. Hill, 8 Bing., 231; Chitty on C., 734–5; 2 Parsons on C., 673. He said the military interference could not protect him, because he did not so contract, and cited Chitty on C., 734–5; 2d Parsons on C., 673; Millward vs. Littlewood, 1 E. L. & E. R., 408; Addison on C., 1123–4; 16th East's R., 201.

WILLIAM T. GOULD, for defendant in error, as to handwriting, cited Gr. on E., sec. 576 to 581, note 3; 16th Ga., 525; 2 Phil. on Ev., 254–5.

McCay, J.

Handwriting is proven by one who has seen the asserted author of the writing write, or who has, in any reliable way, become acquainted with the hand. By our Code, section 3786, if one testify that he knows the hand, he is competent. How he acquired the knowledge may be inquired into, and the result of the inquiry is for the jury. The witness is competent, his credibility, the character of his knowledge, is a thing of degree. But if the witness do not testify affirmatively, but says, that from the knowledge so and so acquired I am of opinion, etc., then the nature of that knowledge may or may not render him incompetent. In this case the witness does not state that he knew the hand, but says that from having read letters, etc., he thought, etc. Clearly, in order to be able to know a handwriting, so as to testify on the subject, the witness must have seen the party write, or have read papers, expressly or by implication, acknowledged by the writer to be genuine. Greenleaf, 1 vol., 577.

Had this witness done either? He never saw Crews write. He only professes to have read certain letters, to-wit: letters which came to a business house at which he was clerk, purporting to be written by Crews. These letters were not in reply to any letters witness had written or had seen written. What was this but hearsay? The witness knew they were defendant's letters simply because they bore his name, and because the house at which he was clerk recognized them as his. We do not think this is within the rule. There must be some recognition by the assumed writer, and of this the witness must testify of his own knowledge. The witness does not pretend to this, and is insufficient. 1 Greenleaf's Evidence, 577, and notes and authorities there cited.

The effort made in this case was to introduce a copy of a letter which was lost or destroyed, and the proposition was to prove that the copy was a true copy of a letter which the witness, from the knowledge before alluded to, believed to be a genuine letter of Crews. The letter was not proposed to be produced to the jury, all was to depend upon the witness'

Bruce, adm'rx, *vs.* Crews.

knowledge. We think the Court did right to reject the witness. The knowledge he had was nothing but hearsay, and as he only pretended to know the handwriting of Crews from this hearsay, we do not think he was competent.

After failing in this, the plaintiff proposed to show the witness several papers which had been proven before the Court to be in the handwriting of Crews, and then ask the witness if the paper he had copied was not, from its resemblance to these writings, also in Crews' handwriting. We agree with the Court below that· this was also inadmissible. This is not the case of permitting a witness, an expert, to testify from a comparison of papers, all present before the jury. This is a simple case of educating the witness in the presence of the Court up to the point of competency. He is asked if certain papers now before the Court do not satisfy him that another paper, not before the Court, was in the hand writing of Crews.

The rule requires that a witness called to prove handwriting, shall testify from having seen the person write, or from a knowledge of his hand acquired from writings acknowledged by the party. The case now proposed is to make him competent from knowledge acquired by seeing writings which third persons have said, under oath, were genuine. In our opinion this does not come up to the rule, and is not sustained by the authorities. Section 3787 of our Code requires the writings, to be used for comparison, to be present to go to the jury, and they must, besides, be submitted to the other party before trial.

The contract relied on here is a mutual one. Crews agrees to haul the cotton, and the plaintiff to pay him so much per bag for so doing. In such cases, before a recovery can be had on either side, there must be proof that the party complaining had offered to perform on his part. 1 Chitty Pl., 331 ; 5 Tenn. R., 409 ; 13 Wend., 285 ; 1 Saunders Pl. & Ev., 212 ; Biggers vs. Poe, 5th Georgia Rep., 172. There was no such proof in this case, and the verdict of the jury may be supported on this ground, and if that is the case, it is the settled rule of this Court not to disturb it.

On the trial there was a great deal of evidence going to show that Crews was prevented from hauling this cotton by the military authority of the United States. At that time, as the history of the times informs us, (and this Court will recognize such history,) those authorities were the paramount governing power in South Carolina and Georgia. There was evidence also that there was good ground to suspect, indeed we do suspect, that this cotton, was cotton that under the rules enforced by those authorities, was liable to seizure as blockade cotton. It was in fact seized. If this seizure was by the contrivance of Crews, as the plaintiff contended, on false representations, he, Crews, could not justify himself. But much of the evidence goes to show that the seizure was well founded, that is, that the cotton was blockade cotton. All this was for the jury; they have passed upon it and found for the defendant, under a fair charge of the Court. We do not think the verdict shocks the moral sense, or is so contrary to the evidence as to be conclusively illegal, because based on prejudice or corruption. We think there was evidence from which the jury might fairly believe this was blockade cotton, and that the military authorities might have seized it by virtue, not of false, but of *true* statements of Crews. We will not therefore disturb the verdict.

Judgment affirmed.