## GRESS LUMBER COMPANY *v.* GEORGIA PINE SHINGLE COMPANY.

1. It is not competent for a witness to testify as to the genuineness of a signature to a lost writing, when all the knowledge that he has upon the subject is based upon a comparison of his recollection of such signature with writing proved by other witnesses to be that of the person whose name was signed to the lost instrument.

2. It was error to allow a witness, over proper objection, to testify that he had had the lost instrument in his possession, and that it " bore upon its face indications of being genuine."

3. Otherwise than as above indicated, the grounds of the motion for a new trial were not meritorious, and are not of sufficient importance to be separately dealt with.

Argued May 24, — Decided July 14, 1904.

Trespass.   Before Judge Roberts.   Wilcox superior court. October 19, 1903.

*C. J. Haden* and *E. D. Graham*, for plantiff in error, cited Civil Code, §§ 5246–7;   *Ga. R.* 16/521; 30/619; 39/548; 53/685; 68/18, 28; 79/139; 86/108 (4); 96/421 (1), 584 (2); 109/496; Gr. Ev. (15th ed.) §§ 576–7–8.

*Hal Lawson, J. L. Bankston, M. B. Cannon,* and *Eldridge Cutts,* contra, cited Civil Code, §§ 5142–3–4, 5149, 5245–6; *Ga. R.* 29/287; 44/514; 66/18, 28, 29; 72/173 (6); 119/530; 49/19; 55/326; 58/226; 59/738; 35 L. R. A. 338, note.

FISH, P. J.   This was a suit brought by the Georgia Pine Shingle Company against the Gress Lumber Company, for trespass on land.   There was a verdict for plaintiff, and defendant's motion for a new trial being overruled, it excepted.   Both parties claimed title to the land in question.   The plaintiff had possession of a plat and grant from the State to James L. Mimms, dated January 24, 1848, and claimed under a chain of title from Mimms.   Plaintiff's case depended upon proving that Mimms made a deed to the land to James H. Anderson, dated July 19, 1849, which plaintiff claimed had been lost.   Defendant claimed under a conveyance to it from the heirs at law of Mimms.

1. Complaint was made in the motion for a new trial that the court permitted J. L. Bankston to testify, over the defendant's objections, as follows:   " The original deed (referring to said alleged deed from James L. Mimms to James H. Anderson) purported to be signed by W. Milo Olin as a witness.   I am familiar with the signature of W. Milo Olin, from that deed, and from several circumstances connected with the signature of W. Milo Olin on that deed.   Perhaps you had better let me tell you how I became familiar with the signature.   I have examined the book of minutes of the City Council of Augusta and I have seen his signature in a good many places on that, and witnesses that were

with me there stated that that was the genuine signature of W. Milo Olin. I never saw W. Milo Olin write myself, simply because I never saw him, but I recognized W. Milo Olin's signature at the time I saw it on that book in Augusta. I recognized his signature because I had seen it before on that deed. . . I am familiar with the signature of W. Milo Olin on that deed (referring to said alleged deed from Mimms to Anderson) that I had in my possession. I am familiar with the signature of W. Milo Olin from the book of minutes of the City Council of Augusta. I examined it many times. He was clerk of the City Council of Augusta, and I went through two or three books that ran perhaps from 1854–55–56 until 1860. The clerk of the City Court (?) of Augusta carried the book to the photographer's office, and that photograph was taken from that book in my presence, the negative at least. The signature of W. Milo Olin to that deed (referring to said original deed from Mimms to Anderson) was his genuine signature as I knew it. I recognized it as soon as I laid my eyes on it." Under the rulings made in *Bruce v. Crews*, 39 *Ga.* 544, the objections to this testimony were well taken. On the trial of that case, a witness was called to testify to his knowledge of Crews' handwriting; to prove that he had made a copy of a letter, that the original was in the handwriting of Crews; and to account for the non-production of the original in order to get the copy in evidence. The witness testified that he knew Crews' handwriting from having seen letters purporting to come from him through the mail, in the ordinary course of business, and received by a commercial house in which the witness was a clerk. He testified that such letters were not in reply to any written by him, and that he had never seen the letters to which they purported to be replies. The trial court held that the witness did not have sufficient knowledge of Crews' handwriting to prove it. It was then proposed to show to the witness two letters written by Crews to Bruce, which were already in evidence, and to have the witness testify that the letter from which he made the copy was in the same handwriting as those two letters. The court refused to permit this to be done. Upon review of such rulings, this court held them both to be sound. In delivering the opinion, McCay, J., said: "Handwriting is proven by one who has seen the asserted author of the writing write, or who has, in any re-

liable way, become acquainted with the hand. By our Code, section 3786 [now § 5246], if one testify that he knows the hand, he is competent. How he acquired the knowledge may be inquired into, and the result of the inquiry is for the jury. But if the witness do not testify affirmatively, . . then the nature of that knowledge may or may not render him competent. . . Clearly, in order to be able to know a handwriting, so as to testify on the subject, the witness must have seen the party write, or have read papers expressly or by implication acknowledged by the writer to be genuine. Greenleaf, 1 vol., 577. . . The witness knew they [the letters received by the commercial house] were defendant's letters simply because they bore his name, and because the house at which he was clerk recognized them as his. We do not think this is within the rule. There must be some recognition by the assumed writer, and of this the witness must testify of his own knowledge. . . The effort made in this case was to introduce a copy of a letter which was lost or destroyed, and the proposition was to prove that the copy was a true copy of a letter which the witness, from the knowledge before alluded to, believed to be a genuine letter of Crews. The letter was not proposed to be produced to the jury, all was to depend upon the witness's knowledge. . . The knowledge he had was nothing but hearsay, and as he only pretended to know the handwriting of Crews from this hearsay, we do not think he was competent." Upon the ruling of the trial court upon the proposition "to show the witness several papers which had been proven before the court to be in the handwriting of Crews, and then ask the witness if the paper he had copied was not, from its resemblance to these writings, also in Crews' handwriting," the learned judge said: "We agree with the court below that this was also inadmissible. This is not the case of permitting a witness, an expert, to testify from a comparison of papers, all present before the jury. This is simply a case of educating the witness in the presence of the court up to the point of competency. He is asked if certain papers now before the court do not satisfy him that another paper, not before the court, was in the handwriting of Crews. The rule requires that a witness called to prove handwriting shall testify from having seen the person write, or from a knowledge of his hand acquired from writings acknowledged by the party. The

case now proposed is to make him competent from knowledge acquired by seeing writing which third persons have said, under oath, were genuine. In our opinion this does not come up to the rule, and is not sustained by the authorities. Section 3787 of our Code [now § 5247] requires the writings, to be used for comparison, to be present to go to the jury, and they must, besides, be submitted to the other party before trial." In our opinion, there is no escape from the conclusion that the decision in that case, which has never been overruled, either in whole or in part, is absolutely conclusive of the question with which we are dealing in the present case. It appears, from the above-quoted testimony of Mr. Bankston, that the only knowledge he had of Olin's signature, prior to his examination of the minutes of the City Council of Augusta, was from seeing the name of Olin signed to the lost deed, as a witness. If the witness in the case of *Bruce* v. *Crews*, who testified that he knew Crews' handwriting, from having seen letters purporting to come from him, which were received by due course of mail and in the regular course of business, by the mercantile house in whose service the witness was at the time engaged, did not have sufficient knowledge of Crews' handwriting to be a competent witness in respect thereto, how could Bankston be competent to testify as to Olin's signature, when his only knowledge of it, before he examined the minutes, was, as we have said, from having seen the signature on the lost deed? And if the witness in the case cited could not, in the presence of the court and jury, be educated up to the point of being competent to testify whether a letter which he had seen and copied, but which could not be produced in court, was in the handwriting of Crews, by having submitted to his inspection and examination letters proved to have been written by Crews, certainly Bankston could not, out of court, be educated up to the point of competency to testify that the signature which he saw on the lost deed was that of Olin, by being shown signatures which he was told were, and which were afterwards proved in court in this case to be, the genuine signatures of Olin. We are aware that other courts have laid down a rule different from that announced in *Bruce* v. *Crews*, but the ruling there made is the law in this State.

2. Another ground in the motion for a new trial was, that the court erred in permitting a witness, over the objection of the de-

fendant, to testify that he had had the lost deed in his possession, and that it "bore upon its face indications of being genuine." This ruling of the court was erroneous. In *Holland* v. *Carter*, 79 *Ga.* 139, an ejectment case, in which the defendant raised the issue of forgery in reference to a deed under which the plaintiff claimed, it was held that "there was no error in rejecting testimony . . to the effect that the deed, a copy of which was offered in evidence, the original having been lost, had the appearance on its face of being genuine, . . it appearing that the witnesses did not know, except from its appearance, whether the deed was genuine or not, and had no acquaintance with the handwriting of the maker or of the witnesses."

3. Otherwise than as above indicated, the grounds of the motion for a new trial were not meritorious, and are not of sufficient importance to require discussion.

*Judgment reversed. All the Justices concur.*