## SOUTHERN TALLOW CO. v. DAVID J. JOSEPH & CO., Inc.

### No. 8865.

Circuit Court of Appeals, Fifth Circuit.

Feb. 27, 1939.

SIBLEY, Circuit Judge, dissenting.

W. F. Himes, of Tampa, Fla., L. D. Mc-Gregor, of Warrenton, Ga., Louis Schonbrun, and Ralph C. Binford, both of Tampa, Fla., for appellant.

Morris E. White and E. C. Johnson, both of Tampa, Fla., and Howard Gould, of Cincinnati, Ohio, for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This was an action against the seller for failure to deliver melting steel, commonly known as scrap iron. The appellee, David J. Joseph Company, having taken over the assets and assumed the liabilities of the original plaintiff, was substituted as plaintiff below, pursuant to stipulation and order of court. This appeal is prosecuted from a final judgment against appellant entered upon the directed verdict of a jury assessing damages in the sum of $7,781.25, the difference between the contract price and the market price at the time specified for delivery.

The plaintiff below, in five counts, declared upon five contracts of sale, alleging in each instance a breach by failure to deliver the amount of steel called for in the contract. Except as to date, price, amount, time of delivery, and description of steel, the five contracts are identical. The first, dated April 24, 1930, called for 2,000 tons at $10 per ton, delivered in railroad cars, free alongside ship, Port Tampa, Florida. The second called for 1,000 tons at $11; the third for 250 tons at $6.50; the fourth for 750 tons at $10.50; and the fifth for 1,500 tons at $9.50. All contracts provided for terms as usual and for shipment during July and August. The usual terms were alleged to include payment of 90% of the purchase price on delivery of dock receipts and the balance when ship cleared. If the material was not delivered within the time specified, the purchaser had the privilege of cancelling the contract without notice or of charging the seller's account with the difference between the contract price and the market price at the expiration of the date of delivery.

Demurrers, pleas, amended pleas, and counterclaims at length were filed in conformity with the local practice; but we think it unnecessary to discuss the identical points raised with reference thereto, since the controverted issues were fully presented to the jury, a fair verdict rendered, and a just judgment entered. It is undisputed that the market price had advanced and that the verdict is not for an amount which makes the seller pay more than would have been required if it had delivered the steel and paid the contract prices.

The issues upon which the trial was had were whether or not the contracts were made as alleged, and, if so, did appellant prove its performance thereof. The performance contended for by appellant was the delivery of scrap within the time specified in the contracts which appellee allocated to unperformed prior contracts. The evidence sustains the verdict, and the verdict establishes the right of appellee to make the allocations, by which appellant received a higher price than if the deliveries had been accepted under the contracts in suit.

It is contended that the proof failed to sustain the allegation that the usual terms, provided for in the contracts, were 90% on delivery of dock receipts and 10% when the ship cleared. As a consequence, it is claimed that appellee had the burden of showing demand and tender of the price. No such contention was made on the trial, and the evidence in the record here shows that no such controversy actually exists. Whatever question may be raised as to the sufficiency of the proof on this point, it can avail the appellant nothing on this appeal, since it does not appear to affect the substantial rights of the parties. Rules of Civil Procedure, Rule 61, 28 U.S.C.A. following section 723c; 28 U.S.C.A. § 391; Moore's Federal Practice, pp. 3285-9.

When introduced in evidence, each of the contracts bore a notation on the margin, "Balance cancelled, Houston letter, 9–28." They were introduced with the explanation that these documents had been used as office records, and that the notation thereon was to avoid confusion in making additional efforts to obtain the material. Upon the further undisputed testimony that it had not been appellee's intention to relinquish its rights under the contracts, the court permitted lines to be drawn through

the notations. This action of the court was objected to, and error is assigned to its ruling. While the contracts gave appellee the option to cancel on non-performance by appellant, no provision was made as to how such cancellation was to be accomplished, except that it might be without notice. Whatever acts are relied upon for cancellation under this option, they would not be effective in the absence of an intention to cancel on the part of some person authorized to make the cancellation. The uncontradicted testimony shows that such intention was wholly lacking. On the trial, appellant raised no issue, either by pleading or proof, as to any exercise of the power of cancellation reserved in the contracts which would relieve it from its obligations thereunder.

■ The real controversy between the parties arose out of the fact that, under previous contracts, appellee had agreed to increase the price and to advance a part thereof before delivery in order to assure performance by appellant. Under the contracts in suit, appellant, having received offers considerably in excess of the contract price, refused to perform unless the price was raised and money advanced. The contention that time was of the essence of the contract appears to be an afterthought on the part of appellant, when the nature of the business and the prior conduct of the parties are given full consideration.

Each side requested a peremptory instruction in its favor, and we think the court committed no reversible error in directing the jury to return a verdict for appellee. The judgment of the district court is affirmed.

SIBLEY, Circuit Judge (dissenting).

The case was tried under the common-law pleading and practice which obtains in Florida. The declaration exhibited the written contracts of sale, which, as to time of payment, provided "Terms, Usual." Unexplained, this would mean that payment was to be contemporaneous with delivery, concurrent acts, for this is the intendment of law where there is no contrary agreement. Williston on. Sales (2 Ed.) § 448; Page on Contracts, § 2965; 35 Cyc. Sales, p. 264. And in such case neither could put the other in default so as to sue him, unless he alleges and proves either an offer on his part to perform within the time fixed, or a demand for performance, which implies an offer. Biggers v. Pace, 5 Ga. 171. If neither does anything within the time limited, the contract lapses. Neither has broken it. Williston on Sales (2 Ed.) § 448; Page on Contracts, § 2970; Williston on Contracts, §§ 832, 833; Bruce v. Crews, 39 Ga. 544, 99 Am.Dec. 467; Pusey v. McElveen Commission Co., 93 Ga. 773, 21 S.E. 150; Sivell v. Hogan, 115 Ga. 667, 668, 42 S.E. 151. This declaration would have been demurrable, for it alleges neither offer to pay nor demand for delivery within the time fixed by the contract. Pusey v. McElveen Commission Co., supra. But it alleged that the "usual terms" were "90% of the price on receipt of dock receipts and 10% after the ship cleared." This allegation made payment not concurrent with delivery, but subsequent to it, so that there was no need to allege demand for delivery or offer to pay within the time, the mere failure to deliver being in itself a breach. The general issue was pleaded, "never promised as alleged," which put in in issue the whole contract, and this allegation was as necessary to be proved to sustain a recovery as it was necessary to be made to prevent a demurrer. It was not proven or attempted to be. Defendant's motion for verdict should have been granted. A verdict for the plaintiff could not lawfully be directed on this plea. Sivell v. Hogan, supra.

The time fixed for delivery was of the essence of the contracts, they being mercantile contracts and for goods of fluctuating price. Jones v. United States, 96 U.S. 24, 24 L.Ed. 644; Norrington v. Wright, 115 U.S. 188, 6 S.Ct. 12, 29 L.Ed. 366; Cleveland Rolling Mill Co. v. Rhodes, 121 U.S. 255, 7 S.Ct. 882, 30 L.Ed. 920; 35 Cyc. Sales, p. 175, 177; Williston on Sales, § 189. After the dates specified had elapsed, without any request for performance or agreement for extension, it was too late to create a breach. Plaintiff was unable in July and August to get any ships to carry this iron. The demands for delivery by plaintiff in October and November were wholly ineffectual. They illustrated no pleaded issue and did not tend to support the declaration. Sivell v. Hogan, supra.

A serious injustice, it seems to me, has been done in not giving more weight to the plaintiff's election to cancel the contracts after their time expired. The judge may have ignored this matter because not pleaded, and was probably correct in so doing by

common-law standards, though an amendment would have relieved this objection if it had been made. On another trial it may be supplied. The contracts all provided (showing expressly the intention that time should be of their essence), "If the material is not shipped within the time specified herein the purchaser has the privilege of cancelling this contract without notice, or may charge the seller's account with the difference between the price herein stated and the prevailing market price at the expiration of the said delivery date." There was no right to postpone the delivery. On September 28th, after the expiration of all delivery dates, plaintiff's Houston office wrote its New Orleans office: "On contracts cancelled by Mr. Jacobson, will you please take these from the tonnage due and make proper notations." It concluded: "Please cancel all remaining Leon M. & I. Co., also Southern Tallow Co. contracts. Per C. D. J." C. D. J. is apparently the witness, Chas D. Jacobson, an executive officer of plaintiff. Accordingly, the New Orleans office entered in red across the face of each of the contracts sued on the words, "Cancelled, Houston Letter 9/28." These copies of the contracts were not stray papers but were bound into a loose-leaf book and constituted the sole office record of contracts. Very plainly, this action on the record taken by direction of the Vice President, with a careful reference to the letter authorizing it, was the proper manifestation of an election to cancel without notice, as the contracts provided, rather than to charge up and collect a difference in price as this suit seeks to do. The election is binding. The explanation by the bookkeeper that "Cancelled" does not mean cancelled but meant that delivery had not been made is much too thin to be credited. Jacobson, who ordered the cancellation, did not testify as to what he meant. The plaintiff had been unable to get more ships than were loaded in August and September, and this may have motivated the cancellation.

Therefore if the pleadings be regarded, as they should be in a common law trial, the defendant should have won on the plea of general issue. If the pleadings be disregarded as the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, now permit, the election to cancel should have defeated plaintiff's suit. There should be a new trial.